

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                    Criminal Case No. 3:14CR044

DILADE MCCOY,

               Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE FOR A NEW TRIAL (Docket Nos. 47 & 48) ("Motion").  For the reasons set forth herein, DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE FOR A NEW TRIAL (Docket Nos. 47 & 48) will be denied.

## PROCEDURAL BACKGROUND

On April 1, 2014, Dilade McCoy ("McCoy") was charged in three counts of a four-count Indictment in the Eastern District of Virginia, Richmond Division. (Docket No. 11.)  A second defendant, Tamara Williams ("Williams"), was also charged in three of the four counts.  Count One charged both McCoy and Williams with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine Hydrochloride, in violation of 21 U.S.C. § 846; Count Two charged both McCoy and Williams with Possession with Intent to Distribute Cocaine Hydrochloride, in

violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(B)(ii); Count Three charged only Williams; and Count Four charged only McCoy with Possession of Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

On April 11, 2014, McCoy and Williams were arraigned, and the trial was scheduled for June 16, 2014. Williams entered a guilty plea to Count One.[1] (Docket No. 17.) McCoy's case was tried to a jury as scheduled.

On June 7, 2014, nine days before trial, the United States filed proposed jury instructions. (Docket No. 21.) The United States included an instruction on aiding and abetting as proposed instruction number 30. McCoy filed a document entitled DEFENDANT'S PROPOSED JURY INSTRUCTION [sic] AND OBJECTIONS. (Docket No. 25) wherein McCoy stated that he had "reviewed the Jury Instructions submitted by the United States, and, excepted [sic] as noted below, has no objection to the Proposed Instructions." (Docket No. 25, at 1.) With regard to Proposed Instruction 30, he stated:

> B. Instruction 30 – Aiding and Abetting. At this time counsel does not believe the evidence will support an instruction for Aiding and Abetting but respectfully prays the Court will take this objection under advisement until the evidence has been heard.

(Docket No. 25, at 2.) On June 12, McCoy filed a MOTION IN

---

[1] McCoy declined the plea offer from the United States.

LIMINE (Docket No. 28) which regard to potential evidence.   A
conference call took place on June 13 to address the MOTION IN
LIMINE.[2]   During the conference call, counsel for the United
States inquired whether the Court or defense counsel wished to
discuss the proposed jury instructions.   The Court advised that
the instructions would be addressed during the charge conference
and that counsel would receive a copy of the Court's proposed
instructions.   Counsel for the Defendant did not ask to address
the Government's proposed instructions at that time, did not
raise any issue with regard to unfair surprise or lack of notice
regarding the proposed aiding and abetting instruction, and did
not request a continuance in order to prepare a defense to the
aiding and abetting theory.

    The trial began on the morning of June 16, 2014 and, before
jury selection, counsel for both parties advised the Court that
there were no pretrial matters that needed to be addressed.   The
jury was selected, and counsel gave opening statements.   At the
conclusion of the Government's evidence, counsel for McCoy
moved, pursuant to Fed. R. Crim. P. 29, for a judgment of
acquittal, which was denied by the Court.   The defense called
one witness and rested.

---

[2] The MOTION IN LIMINE was taken under advisement pending the
trial.   After the trial, the Court issued an order that, given
that McCoy chose not to testify, McCoy's MOTION IN LIMINE was
denied as moot.   (Docket No. 39.)

During the charge conference, the Court's proposed instructions were reviewed with the parties. That discussion included the aiding and abetting instruction (the Court's Proposed Instruction No. 46). The Court expressed its view that aiding and abetting generally should be charged in the indictment. Counsel for the United States responded that the United States is not required to do so. Trial Tr. Excerpt (Docket Nos. 45 & 53-1), at 16-19.

The reason for the view expressed by the Court is that, as it currently stands (see pages 16-18 herein), the law is that aiding and abetting is implied in every count of an indictment, whether specifically charged or not. In my view, that can deprive defendants of meaningful notice of what they must defend. It allows the Government to shift its theory of the case after the evidence is in and argue for guilt on an uncharged aiding and abetting theory when it perceives that its case for liability as a principal has not come in as expected.

That advantage conferred on the Government by the current law simply ignores the fact that lawyers try cases based on what is charged. They decide what questions to ask and not to ask on that basis. They make, or refrain from making, arguments on that basis. A defense lawyer who presents a defense to a charge on the basis of principal liability because that is the only charged theory is thus at a substantial disadvantage when the

Government, after all the evidence is in, shifts its theory from principal liability to aiding and abetting liability. That, in my view, confers an unfair advantage on the Government.

A somewhat more thorny problem created by the notion that aiding and abetting is inherent in every count (whether charged or not) is that courts have no way of knowing whether the grand jury even considered the theory, much less that it found probable cause to believe that the defendant is an aider and abettor. That, in my view, is a significant problem because the defendant who is not charged as an aider and abettor has to risk a trial on a theory that, for all he knows, has never been considered by the grand jury and as to which a grand jury has not found probable cause.

These two points are important because aiding and abetting is, at law and in fact, a different kind of criminal liability than principal liability. And, that is not changed merely because 18 U.S.C. § 2 provides that an aider and abettor shall be punished the same as if he were a principal. Indeed, there is a great, and legally significant, difference between whether a defendant is criminally liable for an offense and how he is to be punished if found guilty of it.

At the conclusion of the discussion of this point between the Court and counsel for the Government, counsel for the defendant stated: "Just for the record, please note my objection

to it that was raised pretrial and my continuing objection to that instruction, please." Id. at 19.[3]  The Court instructed the jury according to the decisions made during the charge conference, including the aiding and abetting instruction as to Count Two, and the jury began its deliberations. At approximately 4:45 p.m.,[4] the jury advised that it had a question about Count Two.  The question was:

> RE: Count Two.  Does aiding and abetting another person who possesses drugs with the intent to distribute make the person who is aiding and abetting also guilty of possession with intent to distribute?

Id. at 21.  The Court read the question into the record and then asked counsel for their views on how the Court should respond.

Defense counsel responded first, stating, "First, I want the record to reflect that we objected to the aiding and abetting instruction."  Id. at 21.  The Court responded, "Do you think that it's necessary for you to do that any more than you've already done?"  Defense counsel replied, "No, sir, but I

---

[3] During oral argument on this motion, defense counsel contended that, in making this statement, he had adopted the Court's statement respecting the aiding and abetting instruction, but the transcript does not reflect that he explicitly did so. Moreover, whether he did so or not, the Court gave careful consideration to whether an aiding and abetting instruction should be given, based on the evidence and the current law, and concluded that it was appropriate in this case.

[4] The Trial Transcript Excerpt ((Docket Nos. 45 & 53-1) contains a typographical error with regard to the time.  It states that Court resumed session to address the jury's question at 3:35 p.m., but the minute entry (Docket No. 35) shows that the question was received from the jury at approximately 4:45 p.m.

just want to preserve the record, to which the Court responded, "The record is preserved." Defense counsel then stated, "Then my position is that the Court does not expand upon the definition of aiding and abetting any more than the instruction that has already been given." Id.

Counsel for the United States then stated, "I would suggest either the Court refer them to the jury instruction for aiding and abetting or rereads, as the Court sees fit, the aiding and abetting instruction." Id. at 21-22. The Court asked, "What is wrong in answering this question in the following way: Yes?" Id. at 22. There was further discussion with counsel, during which the Court stated that perhaps the instruction should not have been given because aiding and abetting was not charged in the Indictment and that the absence of such a charge can affect a defendant's preparation to defend against it (see id. at 16-19, during charge conference, and id. at 22-23, during the discussion regarding jury question). Also, it was recognized that the law of the circuit did not require that aiding and abetting be charged. During that discussion, defense counsel stated, "But it's for those purposes [referring to a possible appeal] that I just wanted to preserve the record," to which the Court responded, "You have preserved it. You don't want it given at all, period." Id. at 23. After discussion with counsel, the Court answered the jury's question as follows:

All right. As to your question on aiding and abetting, the question is: Does aiding and abetting another person who possesses drugs with intent to distribute make the person who is aiding and abetting also guilty of possession with intent to distribute?

The instruction on aiding and abetting is instruction No. 46, and I refer you to that instruction, which you can read at your leisure, but let me say the following about it: That instruction says in the second sentence of the first paragraph of instruction 46, "A person may violate the law even though he or she does not personally do each and every act constituting the offense if that person aided and abetted the commission of the offense."

And that's because the law says that whoever aids and abets the commissions of an offense is guilty, and on the instruction it says "is punishable as a principal."

"Punishable as a principal" means if you aid and abet the commission of an offense, you are guilty of committing that offense. That's what it says.

Now, you need to keep in mind that Count Two is possession with intent to distribute cocaine hydrochloride. So before anybody could be convicted of aiding and abetting the commission of that offense, it must be first proved beyond a reasonable doubt that somebody did commit that offense other than the person who is charged with aiding and abetting.

So if I am charged with aiding and abetting you in the possession with intent to distribute cocaine hydrochloride, I can't be convicted of that offense unless the jury unanimously finds that you, in fact, did commit the offense. Are you all with me so far on that?

Now, in addition to that -- and this is in the instruction. I'm just sort of structuring it somewhat in a different way. Before Mr. McCoy could be held responsible for aiding and abetting Mr. Williams in the commission of that crime, it is necessary that the government prove beyond a reasonable doubt that Mr. McCoy knowingly and deliberately associated himself in some way with that crime and participated in it with the intent to commit it. So that's part and parcel of what has to be proved.

So the elements of the offense then are this. The government has to prove beyond a reasonable doubt:
(1) That Mr. McCoy knew that the crime charged in Count Two, possession with intent to distribute

cocaine hydrochloride, was to be committed or was being committed on the 28th of November, 2013.
(2) That Mr. McCoy knowingly did some act for the purpose of aiding, abetting, commanding or encouraging the commission of that offense by Mr. Williams.
(3) That Mr. McCoy acted with the intention of causing the crime, that is possession with intent to distribute cocaine hydrochloride to be committed.
So they have to prove those three elements as well. And in that regard, keep in mind the last paragraph here says, "Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed isn't enough for you to find that Mr. McCoy aided and abetted the commission of a crime.
The government has to prove that Mr. McCoy knowingly associated himself with that crime in some way as a participant in that crime, someone who wanted the crime to be committed, not as a mere spectator to it, or not as someone who saw it going on.
Does that help answer your question in parsing the instruction that way?
Is there anything else that I need to say?

Id. at 23-26.   Both counsel agreed that there was nothing else that the Court should say and that no corrections were needed. The Court also stated to defense counsel: "You still have your objection to the fact it shouldn't have been given in the first place."   Defense counsel responded, "Thank you," to which the Court stated: "And you always will have it."   Defense counsel concluded, "Thank you, sir.   You never know."   Id. at 28.

The Court recessed at approximately 4:58 p.m., and approximately one hour later, at 5:56 p.m., the jury returned with a verdict.   The jury found McCoy guilty on Counts One and Two, and not guilty on Count Four.   Id. at 29.   The jury found that the offenses charged in both Counts One and Two involved at

least 500 grams but less than five kilograms of cocaine hydrochloride.

On June 18, the Court issued an order setting deadlines for post-trial motions (Docket No. 40). On July 24, 2014, McCoy filed DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE, FOR A NEW TRIAL (Docket Nos. 47 & 48). The United States responded on August 15, 2014 (Docket No. 53). No reply was filed.

## EVIDENCE AT TRIAL

The record shows that McCoy's co-defendant, Williams, was being investigated for distribution of cocaine hydrochloride. The investigation sought to determine Williams' source of cocaine hydrochloride. To that end, an informant ordered cocaine hydrochloride from Williams who advised that he would have to secure it. On November 27, 2013, the investigators conducted surveillance on Williams' residence at 3012 Cresswell Street in Chesterfield County, Virginia. On November 28, 2013, the investigators executed a search warrant at 3012 Cresswell Street, where they encountered McCoy and Williams in a locked room at that residence. Officer Necolettos and another individual observed McCoy throwing objects that were later identified as three separate one kilogram packages of cocaine hydrochloride into a closet. Another witness, Officer Duquette, testified that, as he entered the room, he saw McCoy whose hand

was in the air as though McCoy had just thrown something into the closet.

Two kilogram packages of cocaine hydrochloride were recovered from inside the closet, and one kilogram package was recovered from the doorway of the closet. Williams testified at trial that he and McCoy had agreed to distribute the kilograms of cocaine hydrochloride that were in the room, as well as four additional kilograms that had been distributed earlier.[5] As to the three kilograms that were found in the room in which Williams and McCoy were located, Williams testified that he had ordered them from McCoy. He also stated that McCoy threw the three kilogram packages of cocaine hydrochloride into the closet as law enforcement entered the residence.

## DISCUSSION

### A. Federal Rules of Criminal Procedure 29 and 33

Under Fed. R. Crim. P. 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." If the jury returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Entry of judgment of acquittal is appropriate where "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A judgment of

---

[5] Williams testified that three of the previous four kilograms had been returned to McCoy because the quality was unacceptable.

acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In the Fourth Circuit, the well-settled test is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982) (citing United States v. Dominguez, 604 F.2d 304, 310 (4th Cir. 1979), cert. denied, 444 U.S. 1014 (1980); United States v. Stroupe, 538 F.2d 1063, 1066 (4th Cir. 1976)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). Accordingly, if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a

reasonable doubt," the jury's verdict must stand. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "In applying this standard, [the Court] must remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Burgos, 94 F.3d at 862. "'Circumstantial evidence is not inherently less valuable or less probative than direct evidence' and may alone support a guilty verdict." United States v. Martin, 523 F.3d 281, 289 (4th Cir. 2008)(quoting United States v. Williams, 445 F.3d 724, 731 (4th Cir. 2006)).

Pursuant to Fed. R. Crim. P. 33, upon motion of the defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for a new trial is within the broad discretion of the district court. "[T]he meaning of the phrase 'in the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the

fundamental fairness or integrity of the trial result is substantially in doubt." United States v. Jennings, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), aff'd, 496 F.3d 344 (4th Cir. 2007).

"The court's authority is broader under Rule 33 than under Rule 29, and it may weigh evidence and evaluate the credibility of witnesses in determining whether to grant a new trial." United States v. Jackson, 2006 WL 1587457, *1 (W.D. Va. 2006)(citing United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979)).

## B.  McCoy's Arguments

McCoy's arguments in support of "a mistrial, or, alternatively, for a judgment of acquittal on Counts One and Two" (Docket No. 47, at 12) or "a new trial," id. at 13, are as follows:

> (1) Title 18, U.S.C. § 2 was not charged in the Indictment and, therefore, McCoy was neither on notice during the pendency of the trial nor during the presentation of his evidence that the government was proceeding under this theory of guilt;
>
> (2) the evidence did not support an aiding and abetting instruction; and
>
> (3) the Court's aiding and abetting instruction was improper.

(Docket No. 47, at 2.)

## C.   Analysis

### 1.   Count One

Although McCoy's motion refers several times to a mistrial or a judgment of acquittal as to both Counts One and Two, and defense counsel reconfirmed this position during oral argument, his arguments relate only to the aiding and abetting instruction, and the aiding and abetting instruction was given only on Count Two.  The jury was not instructed on aiding and abetting as to Count One. Moreover, the jury was specifically instructed that it must give separate consideration to each of the three counts.   Juries are presumed to follow the instructions of the Court.   United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.").   Thus, because the errors that McCoy presents relate only to Count Two and do not relate to Count One at all, the conviction on Count One stands, and the Motion will be denied as to Count One.

### 2.   Count Two

### (a)   McCoy's Rule 29-Related Argument

Looking first at the motion for judgment of acquittal under Rule 29, taken in the light most favorable to the Government, the Court concludes that the evidence is sufficient to sustain the verdict as to Count Two. And, specifically with regard to

McCoy's second argument, see Motion (Docket No. 47), at 2, to which Rule 29 applies, the evidence is also sufficient to support an aiding and abetting instruction.

Aiding and abetting is not a separate offense, and the common law distinction between principal and accessory has been abolished.   United States v. Scroger, 998 F.3d 1256, 1262 (10th Cir. 1996); 18 U.S.C. § 2 ("Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). It is settled that a defendant may be convicted on an aiding and abetting theory even if he is not charged under 18 U.S.C. § 2.[6] In United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003), the Fourth Circuit explained the law of aiding and abetting:

> It is clear, moreover, that conviction on an aiding and abetting theory is proper, even if the government did not specifically charge Rashwan under 18 U.S.C. § 2. "[A] defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor." United States v. Scroger, 98 F.3d 1256, 1262 (10th Cir. 1996) (citation omitted). Aiding and abetting "is not an independent crime under 18 U.S.C. § 2." Id. Section 2 merely obviates the need for awkward phrasing and strained readings of statutes by making clear that in all crimes an accessory will

---

[6] The Court has examined McCoy's arguments regarding the Grand Jury Clause of the Fifth Amendment and the case law on which he relies.  The Court agrees that the better practice in most cases is for the indictment to charge specifically a violation of 18 U.S.C. § 2, but the Court concludes that it is not required, and McCoy's due process argument is without merit.

> be punished as a principal. Thus, aiding and abetting "is implicit in all indictments." United States v. Dodd, 43 F.3d 759, 762 n.5 (1st Cir. 1995).
>
> And as United States v. Perry, 643 F.2d 38, 45 (2d Cir. 1981), indicates, the precise language used in the indictment, by the prosecution, or in the jury instructions is unimportant. So long as all of the elements necessary to find Rashwan guilty of the crime, whether as a principal or as aider or abettor, were put before the jury, conviction will be proper.

United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003).

See also United States v. Ashley, 606 F.3d 135, 143 (4th Cir. 2010)("Because the aiding and abetting provision does not set forth an essential element of the offense with which the defendant is charged or itself create a separate offense, aiding and abetting liability need not be charged in an indictment."); United States v. Duke, 409 F.2d 669, 671 (4th Cir. 1969)("[W]e have consistently held that under 18 U.S.C.A. § 2 one may be convicted of aiding and abetting under an indictment which charges only the principal offense."); United States v. Day, 700 F.3d 713, 720 (4th Cir. 2012)(quoting both Ashley and Duke and confirming the holdings respecting aiding and abetting in those decisions).

An instruction for aiding and abetting is proper whenever the evidence supports it. United States v. Kegler, 724 F.3d 190, 200-01 (D.C. Cir. 1983). Even if the government's theory against a defendant is that he was the principal, an instruction on

aiding and abetting against the principal-defendant can be proper if supported by the evidence. United States v. Cueto, 628 F.2d 1273, 1275 (10th Cir. 1980). Accord United States v. Colbert, 261 F. App'x 466, 470-71 (4th Cir. 2008)(holding that the instruction was appropriate even though the United States did not ask for it because the evidence warranted the instruction).

That is the current state of the law, and it makes no difference that I disagree with it, for the power to change it does not rest with this Court. Here the evidence supports both the giving of the aiding and abetting instruction and McCoy's conviction on Count Two. The evidence at trial proved that McCoy and Williams conspired to distribute and to possess with intent to distribute cocaine hydrochloride and that both possessed the cocaine hydrochloride with intent to distribute. McCoy was convicted of the conspiracy count, Count One, and that conviction stands. The evidence also proved that McCoy and Williams were in a room with three kilogram packages of cocaine when law enforcement entered the residence, and that McCoy was observed throwing the cocaine into the closet, clearly attempting to hide the cocaine from law enforcement. The amount of cocaine far exceeded personal use, and there was evidence that McCoy and Williams had distributed cocaine previously and that the three kilograms that were in the room at the time of

the search were to be distributed. The record also showed that miscellaneous baggies, 2 spoons, one sifter, and a digital scale, items used in the drug distribution trade, were found at McCoy's home. Based on all the evidence, a reasonable jury could conclude that McCoy aided and abetted in the possession with intent to distribute the cocaine hydrochloride both when McCoy arranged to deliver and in fact delivered the cocaine hydrochloride to Williams knowing that Williams would possess it with the intent to distribute it, and when McCoy threw the cocaine hydrochloride into the closet in an attempt to hide it from law enforcement and, thus, facilitate Williams' possession with intent to distribute.[7]

Accordingly, to the extent that the Motion calls for a judgment of acquittal based on the insufficiency of the evidence to sustain a verdict as to Count Two or based on McCoy's argument that the evidence was insufficient to warrant an aiding and abetting instruction, it will be denied.

### (b)  McCoy's Rule 33-Related Arguments

McCoy's other two arguments – that McCoy was not on notice respecting an aiding and abetting theory and that the Court's

---

[7] No one knows whether the jury found McCoy guilty of Count Two as a principal or as an aider & abettor, but there was sufficient evidence to support either theory because there was evidence that McCoy, who was Williams' supplier, possessed the cocaine hydrochloride with the intent to distribute it to Williams, and that he did in fact distribute it to Williams.

instruction on aiding and abetting was improper – are more appropriately analyzed under Rule 33.

### (i) McCoy's Argument That He Was Not On Notice Respecting An Aiding And Abetting Theory

McCoy argues that he was not on notice during the pendency of this matter or during the trial that the United States was proceeding under the theory of aiding and abetting. That argument is based on the erroneous premise that he objected to the aiding and abetting instruction for the reason that "any theory of guilt under the aiding and abetting statute must be pled in the indictment." (Docket No. 47, at 2.) However, McCoy did not explicitly make such an objection except to the extent that he can be said to have adopted the Court's concern on that aspect of the issue. And, even if that is the case, the law does not support an objection on that ground.

More importantly, the Government's proposed jury instructions, which included an aiding and abetting instruction, were filed nine days before the trial date. That put McCoy on notice that the Government intended to rely on an aiding and abetting theory. In McCoy's objections to the Government's jury instructions, his objection to the aiding and abetting instruction was only that "[a]t this time counsel does not believe the evidence will support an instruction for Aiding and Abetting but respectfully prays the Court will take this objection under advisement until the evidence has been heard."

(Docket No. 25, at 1.)   There was no pretrial objection based on the fact that that aiding and abetting was not pled in the Indictment and no pretrial objection based on inadequate notice or unfair surprise.

Nor did McCoy seek a continuance after the Government filed an instruction on aiding and abetting.   Had he truly been surprised by the unpled theory, one would expect that the matter would have been raised by seeking a continuance.

Even during the charge conference, notwithstanding the fact that the Court sua sponte voiced its concern regarding inadequate notice when an indictment does not charge aiding and abetting, McCoy did not object explicitly based on that ground. Instead, he circumscribed his objection by saying it was the one "that was raised pretrial [his belief that "the evidence will [not] support an instruction for Aiding and Abetting"] and my continuing objection to that instruction."   Trial Tr. Excerpt (Docket Nos. 45 & 53-1), at 19.

When the jury question was discussed with counsel, the Court again expressed its concern about the notice issue, but, even at that stage, McCoy did not lodge an objection based on inadequate notice.   Instead, defense counsel reiterated that "we objected to the aiding and abetting instruction," in order "to preserve the record." Id. at 21.

Notwithstanding the Court's view that it would be best if a violation of 18 U.S.C. § 2 was explicitly charged in any indictment in which the United States intends to proceed on that theory, the law is clear that the United States is not required to do so. As discussed previously herein at pages 16-18, aiding and abetting is not considered to be an independent offense but is instead "implicit in all indictments." United States v. Rashwan, 328 F.3d at 165 (citation omitted). McCoy's experienced trial counsel was aware that there is no requirement that aiding and abetting be charged in the indictment.

Furthermore, no later than nine days before trial, he was aware that the United States intended to seek an aiding and abetting instruction and to proceed on that theory in addition to the charges in the Indictment, so he was, in fact, on notice that the Government would proceed on that theory. The defense did not object to the instruction on the ground that aiding and abetting was not charged in the Indictment, nor did the defense claim inadequate notice or unfair surprise. The defense objected only to the extent that the evidence did not support such an instruction. Accordingly, McCoy's argument that McCoy was not on notice respecting an aiding and abetting theory is without merit.

### (ii) McCoy's Argument That The Aiding And Abetting Instruction Was Erroneous

McCoy's final argument is that the Court gave an erroneous aiding and abetting instruction. His contention is that the instruction was erroneous because "it failed to instruct the jury that the defendant did not just 'in some way associate himself with the venture, but also participate[d] in it as in something that he wishe[d] to bring about and [sought] by his action to make it succeed,'" quoting United States v. Rosemond, 134 S. Ct. 1240, 1248 (2014)(internal citations omitted). (Docket No. 47, at 13.)   McCoy argues that the Court's instruction was inadequate, "according to Rosemond, because the jury must be informed that McCoy had to have 'full knowledge of the circumstances constituting the charged offense.'" (Docket No. 47, at 13.)  He contends, again relying on Rosemond, 134 S. Ct. at 1249, that the jury should have been told "that a person who actively participates in a criminal scheme can be found guilty only if he knows the extent and character of the scheme."

When assessing jury instructions, the test is whether, "if viewed as a whole and in the context of the trial, the charge was not misleading and contained an adequate statement of the law. United States v. Scott, 424 F.3d 431, 434 (4th Cir. 2005)(citations omitted).  "Moreover, we do not view a single instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions

accurately and fairly state the controlling law." United States v. Lighty, 616 F.3d 321, 367 (4th Cir. 2010)(citation omitted).

In this case, the Court's instructions were an accurate and fair statement of the controlling law.  The jury was instructed on each of the alleged counts and was correctly instructed on aiding and abetting.  The Court's answer to the jury's question was also a correct statement of the law.  And, after answering the jury's question, the Court asked counsel if there was anything else that needed to be said and if there was anything that needed to be corrected.  Trial Transcript Excerpt (Docket Nos. 45 & 53-1) at 26-27.  Defense counsel responded "No, thank you, sir," and "No, sir," respectively.[8]  The defense now claims that the instruction given by the Court was not a proper statement of the law, yet he failed to object after the aiding and abetting instruction was given initially or when the Court responded to the jury question.  A defendant who fails to object at trial has procedurally defaulted the claim. United States v. Frady, 456 U.S. 152, 163 (1982).  The Court's initial instruction to the jury and the Court's answer to the jury, set forth herein at pages 6-8, were both accurate explanations of the law.

McCoy's argument based on Rosemond, which was analyzing a § 924(c) offense, is without merit.  What Rosemond says is that,

---

[8] Counsel for the United States also had no additions or corrections to the Court's answer to the jury's question. Id.

"for purposes of aiding and abetting law, a person who actively participates in a criminal scheme <u>knowing its extent and character</u> intends that scheme's commission." 134 S. Ct. at 1249 (emphasis added). In a § 924(c) case, the defendant's knowledge of the firearm must be advance knowledge – knowledge that enables him to make the relevant legal choice, at a time when he or she can do something with it, including to walk away. "What matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme – not that, if all had been left to him, he would have planned the identical crime." <u>Id.</u> at 1250. Moreover, in <u>Rosemond</u>, the Court explained that, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." <u>Id.</u> at 1250 n.9.

In this case, the Court's instructions and answer were correct statements of the law, and the evidence satisfies <u>Rosemond</u>'s knowledge requirement. The jury was instructed on the elements of Count Two and, thereafter, aiding and abetting, as it applied to Count Two, was explained. The jury was

instructed, in relevant part, that "it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit the crime."  The elements of aiding and abetting were explained – that the defendant knew that the crime charged in Count Two was to be committed or was being committed, that he knowingly did some act for the purpose of aiding and abetting and encouraging the commission of the crime, and that he acted with the intention of causing the crime charged in Count Two to be committed.  The Court also explained that, before a defendant can be found guilty as an aider or abettor, the Government has to prove beyond a reasonable doubt that someone committed each of the essential elements of the crime charged.  The Court concluded by explaining that mere presence or mere knowledge is not enough to convict as an aider and abettor and that, instead, the Government must prove that the defendant associated himself with the crime as a participant, not as a mere spectator.

The evidence demonstrates that McCoy had more than sufficient advance knowledge of the crime of possession with intent to distribute cocaine hydrochloride for aiding and abetting liability to be satisfied. The jury convicted McCoy of conspiring with Williams to distribute and to possess with intent to distribute cocaine hydrochloride. And, as to Count

Two, the evidence proved that McCoy first arranged for the delivery to Williams and, in fact, delivered the cocaine hydrochloride to Williams with complete knowledge that Williams was the middleman who planned to sell the cocaine hydrochloride to his customer. Then, when law enforcement officers arrived, McCoy opened the back door as if to flee the residence, then slammed it closed and threw the three kilograms of cocaine hydrochloride into the closet in an attempt to hide the drugs from law enforcement which, of course, would facilitate Williams' possession with intent to distribute. Thus, McCoy's argument that the Court's jury instruction was erroneous is without merit.

CONCLUSION

For all these reasons, DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE FOR A NEW TRIAL (Docket Nos. 47 and 48) will be denied.

It is so ORDERED.

/s/   *REP*
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 17, 2014