IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

     v.                                       Criminal No. 3:14cr044-2 (DJN)

DILADE MCCOY,
     Defendant.

## MEMORANDUM OPINION

On April 1, 2014, a grand jury returned an Indictment against Defendant Dilade McCoy ("Defendant") and one co-defendant, charging Defendant with one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B)(ii) and 846 (Count One), one count of possession with intent to distribute 500 grams or more of cocaine hydrochloride in violation of §§ 841(a) and 841(b)(1)(B)(ii) (Count Two), and one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Four). On June 18, 2014, a jury found Defendant guilty of Counts One and Two and not guilty of Count Four. On September 11, 2014, Senior United States District Judge Robert E. Payne sentenced Defendant to 188 months' imprisonment, eight years of supervised release and a $100 special assessment.

This matter now comes before the Court on Defendant's Motion to be Placed on Home Confinement (ECF No. 142) and Supplemental Motion for Compassionate Release (ECF No. 147) (collectively, "Defendant's Motions"), both of which move pursuant to 18 U.S.C.

§ 3582(c)(1)(A) for Defendant's release on home confinement in light of his age, medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19").[1] For the reasons set forth below, the Court DENIES Defendant's Motions (ECF Nos. 142, 147).

## I. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant

---

[1] On May 29, 2020, Defendant, proceeding *pro se*, filed his initial Motion to be Placed on Home Confinement (ECF No. 142), which also moved for his compassionate release. The Court then appointed counsel for Defendant, who filed a renewed Motion for Compassionate Release (ECF No. 147) on Defendant's behalf. Because Defendant's counsel has reviewed Defendant's initial arguments and incorporated them into Defendant's renewed Motion (ECF No. 147), for the same reasons that the Court denies Defendant's renewed Motion, the Court also DENIES Defendant's initial Motion (ECF No. 142).

2

such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g., United States v. Beck*, __ F. Supp. 3d ___, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. USSG § 1B1.13, application notes 1(A)-(D).

However, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), __ F. Supp. 3d __, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, __ F. Supp. 3d __, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling* (*Feiling II*), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). Additionally, the Sentencing Commission has advised

courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[2] USSG § 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

## II. ANALYSIS

After Defendant began serving his 188-month prison sentence, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19). In response, on May 29, 2020, Defendant filed his initial Motion to be Placed on Home Confinement (ECF No. 142), seeking compassionate release. After the Court appointed counsel to represent Defendant, on June 12, 2020, Defendant's counsel filed a Supplemental Motion (ECF No. 147), which

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

5

incorporated Defendant's initial arguments and moved for his compassionate release or, in the alternative, requested that the Court issue a nonbinding recommendation to the Bureau of Prisons ("BOP") that Defendant serve the remainder of his sentence on home confinement.

In support of his Motions, Defendant argues that his age (49) and two of his medical conditions — namely, asthma and hypertension — render him particularly susceptible to COVID-19. (Suppl. Mot. for Release ("Def.'s Mot.") (ECF No. 147) at 1, 8-10.) Defendant adds that characteristic inherent to the prison environment and the emergence of confirmed COVID-19 cases at his prison facility — FCI Loretto — create an increased risk that he will contract COVID-19 if he remains incarcerated. (Def.'s Mot. at 4-8; Update to Reply (ECF No. 157) at 1.)

As for whether his release on home confinement comports with the relevant § 3553(a) factors and policy statements, Defendant argues that he will not present a danger to the community if released, because although he received several convictions as a juvenile, he has a relatively limited adult criminal history and his offenses of conviction are nonviolent. (Def.'s Mot. at 10.) Defendant further contends that his age group has a significantly lower chance of recidivism. (Def.'s Mot. at 10-11.) And Defendant avers that his release on home confinement would better protect the public, because it will reduce the risk of further spread of COVID-19 by allowing him to self-isolate. (Def.'s Mot. at 11.) Finally, Defendant asserts that he has a viable release plan, which includes living with his fiancé, her parents and his daughter in a two-story home. (Def.'s Mot. at 10.) Defendant also states that he will have guaranteed employment with a towing company if released. (Def.'s Mot. at 2.)

In the alternative, if the Court denies his request for compassionate release, Defendant asks that the Court make a nonbinding recommendation to the BOP that Defendant serve his

sentence on home confinement, citing 18 U.S.C. § 3621(b)(4), which provides that the BOP shall designate the facility at which an inmate serves his sentence after considering several factors, including "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." (Def.'s Mot. at 12-13.)

In response to Defendant's Motions, the Government argues that Defendant has not established extraordinary and compelling reasons for his release on home confinement. (U.S.' Resp. Opp. Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 149) at 12-15.) Specifically, the Government contends that Defendant has established neither a particularized susceptibility to COVID-19 nor a particularized risk of contracting the disease at his prison facility. (Gov't Resp. at 15.) The Government maintains that Defendant's medical records fail to establish that Defendant suffers from decreased lung function or that his asthma has become more than "mild" or "intermittent." (Gov't Resp. at 15.) Likewise, the Government avers that Defendant's claims of hypertension rely on "one medical session" and ignore his otherwise normal blood pressure readings throughout his incarceration. (Gov't Resp. at 15.)

The Government also argues that Defendant's release would undermine the relevant § 3553(a) factors and policy statements. (Gov't Resp. at 16.) The Government asserts that Defendant remains a danger to the community, noting that Defendant's criminal history proved severe enough that Judge Payne granted an upward departure from the guidelines range after finding that Defendant's criminal history category underrepresented his criminal background and risk of recidivism. (Gov't Resp. at 16.) The Government notes that Defendant's instant offenses involved the trafficking of multiple kilograms of cocaine. (Gov't Resp. at 16-18.) The Government also points out that Defendant has been reprimanded by prison officials for possessing a cell phone in violation of BOP rules. (Gov't Resp. at 18.) Based on Defendant's

7

record, the Government argues that Defendant's release would undermine the relevant policy statements and the § 3553(a) factors. (Gov't Resp. at 18.) The Court agrees with the Government.

As a threshold matter, neither party contends that Defendant has failed to exhaust his administrative remedies under § 3582(c)(1)(A). Indeed, Exhibit 1 to Defendant's Supplemental Motion shows that Defendant submitted a request for compassionate release to the warden at FCI Loretto on April 9, 2020, and received a denial letter on April 17, 2020. (Ex. 1 to Def.'s Mot. (ECF No. 147-1) at 2.) Accordingly, the Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A) and that the Court has jurisdiction to consider the merits of Defendant's Motions.

To that end, the Court finds that Defendant has established neither an extraordinary and compelling reason for his release nor that his release would be consistent with the relevant § 3553(a) factors and policy statements. As mentioned, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 2020 WL 1821457, at *7 (citations omitted). Here, Defendant has not made the initial showing of a particularized susceptibility to COVID-19.

To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g., United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC

8

has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). Indeed, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 2020 WL 1821457, at *7 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification." (quoting *United States v. Clark*, __ F. Supp. 3d __, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (emphasis supplied))).

In the instant case, Defendant argues that he has a particularized susceptibility to COVID-19 due to his asthma and hypertension. (Def.'s Mot. at 1.) Defendant's initial Motion also claims that he has a vascular filter embedded in his abdomen, presumably to prevent blood clots. (Mot. to Be Placed on Home Confinement (ECF No. 142) at 1.) However, the Court's review of Defendant's BOP health records reveals that Defendant's conditions are not so severe as to establish his particularized susceptibility to COVID-19.

For one, although Defendant asserts that he suffers from hypertension, blood pressure readings taken during Defendant's incarceration have only intermittently fallen above the accepted threshold for hypertension, 130/80 mmHg, and even then, have generally fallen in the borderline range. (*See* Ex. C to Gov't Resp. ("Med. R.") (ECF No. 152-1) at 4 (reading of 124/75 mmHg in November 2019), 8 (135/86 mmHg in December 2019), 12 (131/83 mmHg in October 2019), 16 (140/82 in August 2019), 30 (116/78 mmHg in July 2019), 33 (111/82 mmHg in July 2019), 36 (119/79 mmHg in July 2019), 59 (116/78 mmHg and 158/92 mmHg in July

9

2019), 89 (158/60 mmHg in December 2019).) Notably, except for one indication that Defendant had "abnormal" blood pressure in December 2019, Defendant's treatment providers have not diagnosed Defendant with hypertension in any of their assessments, and Defendant has not received any medications or ongoing treatment for his blood pressure. (*See* Med. R. at 3-4 (reviewing Defendant's blood pressure in November 2019 and denying any "existing cardiovascular disease" or "[h]istory of hypertension"), 8 (noting normal heart condition in December 2019 and declining to list hypertension as one of Defendant's conditions), 17 (listing only "[a]sthma, unspecified" under Defendant's assessment in August 2019), 22 (noting normal cardiovascular function and listing asthma and an unspecified eye disorder as Defendant's conditions in August 2019), 30 (noting normal cardiovascular function and listing only an unspecified eye disorder in Defendant's assessment), 44 (listing history of cardiovascular issues and hypertension as "denied" in October 2019), 104 (finding no acute cardiopulmonary disease and normal heart size in July 2019).)

Based on the objective medical evidence, Defendant has not established that he suffers from hypertension, let alone hypertension that proves severe enough to constitute an extraordinary and compelling reason for his release, either on its own or in light of the COVID-19 pandemic. Although Defendant has intermittently exhibited higher-than-normal blood pressure readings, his blood pressure has remained either under normal limits or within a borderline range that does not support a finding that Defendant remains particularly susceptible to COVID-19. And the Court will defer to the expertise of Defendant's medical providers, none of whom have diagnosed Defendant with hypertension or recommended treatment for Defendant's blood pressure.

Similarly, although Defendant cites to a history of blood clotting, he provides only one medical record in support of this impairment, and he denies any recent history of blood clots in that record. (*See* Ex. 4 to Def.'s Mot. (ECF No. 147-4) at 3 (noting that defendant has a history of "venous thromboembolic disease" but denying "any symptoms related to his [abdominal] filter" or "any history of recent blood clots or leg swelling").) As such, the Court remains unconvinced that Defendant's potential for blood clotting renders him particularly susceptible to COVID-19.

As for Defendant's asthma, although BOP medical staff listed asthma as one of Defendant's conditions and prescribed him an inhaler, Defendant's medical records indicate that his asthma has remained "stable," "mild" and "intermittent." (*See* Med. R. at 8 (noting clear lungs in October 2019), 16-17 (noting in August 2019 that Defendant had "[m]ild intermittent asthma, stable on current inhaler," with "normal" respiratory function and no crackles, rhonchi or wheezing), 21-22 (noting normal pulmonary function and clear breathing in August 2019), 54 (describing Defendant's asthma in October 2019 as "[m]ild intermittent" and noting that Defendant's peak expiratory flow "exceed[ed] his target range of 429-629"), 87 (noting normal pulmonary effort and "breath sounds" in December 2019), 104 (noting "mild low lung volumes," clear lungs, no "pleural effusions" and "[n]o acute cardiopulmonary disease" in July 2019).) Indeed, Defendant relayed to his treatment providers that he uses his inhaler "mostly before he goes to sleep to prevent night[time] cough or wheeze." (Med. R. at 21; *see also* Med R. at 7 (denying chest pain in October 2019).)

As with Defendant's hypertension, the Court finds that the medical evidence does not support a finding that Defendant's asthma renders him particularly susceptible to COVID-19. Although medical providers have diagnosed Defendant with asthma, his condition has remained

11

mild and intermittent, and Defendant's pulmonary functioning has remained stable. Certainly, Defendant's asthma increases the likelihood that he will become symptomatic if he contracts COVID-19, but the medical records do not indicate that Defendant's susceptibility would be so severe as to provide an extraordinary and compelling reason for his compassionate release.[3]

Neither does the Court find Defendant's compassionate release appropriate under the relevant § 3553(a) factors and policy statements. For one, Defendant's offenses of conviction involved the distribution of multiple kilograms of cocaine hydrochloride, including the interstate transportation of the drug from New York to Virginia. (Presentence Investigation Report ("PSR") (ECF No. 144) ¶¶ 12-20.) Indeed, at the scene of Defendant's arrest, law enforcement officers retrieved over three kilograms of cocaine hydrochloride and $20,000 in United States currency. (PSR ¶ 17.) Officers also found a firearm and marijuana in the same residence. (PSR ¶ 17.) In total, the investigation attributed seven kilograms of cocaine hydrochloride to Defendant. (PSR ¶ 20.)

Moreover, Defendant's instant offenses followed an extensive criminal history, which started at age 15 with a conviction for second-degree robbery. (PSR ¶ 39.) Before reaching adulthood, state authorities also convicted Defendant of first-degree robbery and assault with intent to cause serious injury with a weapon, the latter of which resulted from Defendant

---

[3] Defendant suggests that his age (49) also renders him particularly susceptible to COVID-19. However, current CDC guidance does not include Defendant's age group within the demographic of those most at risk of COVID-19 complications. *See* CDC, Coronavirus Disease 2019 (COVID-19): Older Adults (Sept. 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (stating that 8 out of 10 COVID-19 deaths have been among those aged 65 and older). Accordingly, the Court finds that Defendant's age, both singly and in combination with his other conditions, does not provide an extraordinary and compelling reason for his release.

12

shooting another individual in the leg. (PSR ¶¶ 40-41.) And, as an adult, Defendant received a conviction for possession with intent to distribute cocaine. (PSR ¶ 42.)

Together, both the nature and circumstances of Defendant's underlying offenses and his criminal history weigh against his release on home confinement. Although Defendant's instant offenses are nonviolent, they involved the large-scale, interstate distribution of narcotics, which itself promotes violent crime. Defendant also has an extensive criminal history that includes several violent offenses, so much so that Judge Payne granted an upward departure from Defendant's guidelines range to better account for his criminal history — a sentence that the Fourth Circuit has twice affirmed. (Statement of Reasons (ECF No. 77) at 2; Oct. 15, 2015 Op. (ECF No. 91); Apr. 27, 2017 Op. (ECF No. 124).) And although Defendant has exhibited some post-sentencing rehabilitation, including satisfactory work performance evaluations and productive coursework, (Ex. A to Gov't Resp. (ECF No. 149-1)), in March 2019, prison officials found a cell phone in Defendant's possession in clear violation of BOP policies, (Ex. B to Gov't Resp. (ECF No. 149-2)), which suggests that Defendant has not gained a respect for the law despite completing approximately 50 percent of his sentence.[4]

Ultimately, even if extraordinary and compelling reasons exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that a term of home confinement would not adequately

---

[4] For the same reasons that the Court finds Defendant's early release inconsistent with the § 3553(a) factors, the Court also finds his release inconsistent with the Sentencing Commission's policy statements. Specifically, the Court finds that Defendant's criminal history, the nature of Defendant's underlying offenses and Defendant's possession of contraband while incarcerated establish that he would be a danger to the public if released, as they show a clear disregard for the law. In reaching this conclusion, the Court has considered that Defendant's age group generally has a lower recidivism risk; however, the Court will not ignore Defendant's individual characteristics and demonstrated behavior in favor of generalized statistics.

protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct, or reflect the seriousness of Defendant's offense. For the same reasons, the Court also refuses to issue a nonbinding recommendation to the BOP that Defendant serve the remainder of his sentence on home confinement. Accordingly, the Court denies Defendant's Motions for Compassionate Release.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motions for Compassionate Release (ECF Nos. 142, 147). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: September 8, 2020